OPINION OF THE COURT
Frank M. Klinger, J.
This matter has come before this court by means of a restitution hearing. The question is the determination of the amount of damages to the complainant. The complainant is an insurance salesman who receives a draw against his commissions. His average draw amounted to $3,340.38 for each three- *31 week period. Needless to say, if he stopped selling policies and received no commissions he would received no draw. He states that he was out of commission for a three-week period and therefore made no sales and accrued no commissions for that three-week period. Logically then, he could claim the full $3,340.38 as his damages.
However, he claims only $1,492.48, crediting the defendant with commissions he received on previous sales for that three-week period.
The complainant states that he was unable to meet with clients and sell insurance for that three-week period because his lip was swollen and his tooth was pushed back as a result of the defendant’s assault. Complainant, however, also stated two other causes of his inability to see clients and sell insurance during that three-week period, the first being his "psychological damage” as a result of the defendant’s assault, which as the prosecutor pointed out, should have been substantiated by some qualified psychiatrist or psychologist. The complainant also indicated that one of the reasons he was unable to sell for the three-week period was his upset over certain things that his wife had done, for which the defendant, her father, is obviously not responsible in terms of criminal restitution. Nonetheless, it seems to me, the injury was the only physical impediment to complainant’s work.
In addition to the foregoing, this court notes that the complainant sold insurance. Insurance is frequently sold by salesmen pursuing clients, not the other way around. An individual who is contemplating purchasing insurance, but is unable to obtain an appointment for three weeks, will not necessarily go elsewhere for his insurance needs. To the contrary, many persons find themselves bothered by insurance salesmen and are more than happy to be left alone for awhile.
The complainant has not established to the court with any degree of particularity any particular sales which were irretrievably lost because meetings were not arranged during the three-week period. However, it can be reasonably assumed that when dealing with a person who is self-employed, some business loss is inevitable.
Fuchsberg, New York Law of Damages § 112 (9 Encyclopedia of New York Law) in its headnote states that "Damages need not be calculated with mathematical certainty to permit recovery, and the fact that damages are difficult to ascertain with exactness does not preclude recovery. Reasonable conjee *32 ture concerning damages may be indulged in when the situation leaves no other course open”.
Fuchsberg, New York Law of Damages § 133 states that "To entitle the plaintiff to recover prospective profits he must show some reasonable basis for their computation, but any reasonable method of estimating prospective profits lost as a result of the defendant’s breach or wrongful act is acceptable although the exact amount is uncertain”.
Volume 36 of New York Jurisprudence 2d (Damages, § 14). states that "One may not escape the consequences of his wrongful act simply because the ordinary standards for measuring damages are inapplicable. Nor can a substantial monetary recovery be denied where damage has been sustained and the only question is the extent of such pecuniary injury. The law will resort to some practical means that will be just to the parties”.
Volume 36 of New York Jurisprudence 2d (Damages, § 16) states that "it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to the amount of damage, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery”.
Fuchsberg, New York Law of Damages § 264 states (at 246) that: "Where the prospective gains or profits of an established business constitute a proper element of damages, evidence with respect to various factors furnishing a basis for computing prospective profits should be presented, and, to determine the value of the prospective profits, evidence may be given of the actual profits of the business previous to its interruption or discontinuance. Where the wrongful act results in the partial interruption of a business, the plaintiff may show the amount of business done prior to the interruption and the profits thereof and how much less the business was during the interruption and the consequent diminution of the profits”.
All things considered I feel that an award of $750 is appropriate to compensate the complainant for his monetary loss of earning capacity during the three-week period of time which resulted from the condition of his mouth, which certainly could, in and of itself, have reasonably prevented any attempt to sell insurance, a field in which proper appearance and ability to converse in order to "make a sale” is so important.
All of Mr. Fye’s medical bills were paid by insurance, a fact which does not preclude this court from ordering the defen *33 dant to make restitution to the complainant for such bills. In civil law, the defendant does not receive a benefit because plaintiff has his own insurance, but can be held to pay for the full costs of damages, even if this results in an apparent "windfall” for the plaintiff. Of course it is really not a windfall, since the plaintiff or complainant has paid the premiums or otherwise paid performed services to obtain his own insurance. Nonetheless, since there has been no specific request for reimbursement of medical bills I am not going to order it.
Complainant does, however, request the sum of $1,000 for what can be loosely termed "pain and suffering” or "general damages”. It is now clearly authorized for criminal courts to order reimbursement for such "general” or "punitive” damages of up to $5,000 in addition to dollar-for-dollar proven medical expenses. (Penal Law § 60.27 [5] [a], [b]; People v Corey, 130 Misc 2d 228.)
This amount requested by complainant, over which there was little argument at the restitution hearing, seems to me to be reasonable under all the circumstances, particularly the fact that the complainant was subjected to an unwarranted, unprovoked and unexpected physical assault by the defendant at a time in which the plaintiff was in fact conducting his business at a business meeting or luncheon for which he was appropriately dressed at a suitable restaurant, a fact which in and of itself might have weighed heavily upon the complainant’s mind as he went about future business dealings with that and other clients.
All told I find that the defendant is liable to the complainant for restitution in the amount of $750 for loss of earning capacity plus $1,000 for general or punitive damages, all in the sum total of $1,750 and direct that the same is to be paid together with the lawful surcharge, to the Oswego County Probation Department on or before Tuesday, July 28, 1987.