IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

          v.

STEVEN JAMES KRIER,

          Appellant.

No. 84892-5-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Steven Krier appeals from an order of restitution based on the theft of a rental vehicle that he failed to return. He contends the trial court exceeded its statutory authority in ordering restitution based on speculative harm and challenges the restitution award on various constitutional grounds. However, the constitutional arguments are waived and we conclude that the trial court did not exceed its statutory authority in ordering restitution. Krier also seeks relief from certain legal financial obligations, but his judgment and sentence setting out those obligations is not before us and we decline to reach those issues. Finally, he presents a statement of additional grounds for review, but fails to demonstrate entitlement to relief. We affirm.

FACTS

On April 22, 2021, the State charged Steven James Krier with one count each of theft of rental or leased property over $5,000 (count 1), identity theft in the second degree (count 2), and theft of a motor vehicle (count 3). Pursuant to an agreement with the State, Krier entered a guilty plea to counts 1 and 2. He also

agreed to pay restitution on those counts in an amount to be determined. The plea was "part of an indivisible agreement" that included six different cause numbers. Upon disposition of counts 1 and 2, the State agreed to move to dismiss count 3. Krier entered his plea in keeping with the negotiated resolution and similarly resolved each of his other cases under all six cause numbers.

For purposes of sentencing, Krier stipulated to the facts set out in the State's certifications for determination of probable cause. The probable cause affidavit as to count 1 establishes that on October 15, 2018, Krier leased a GMC vehicle through U-Haul[1] and completed a lease agreement for one day. The vehicle was never returned, and two weeks later, it was reported stolen. On November 6, 2018, employees of a towing company, which has a contract with U-Haul and access to U-Haul's vehicle lease database, noticed the stolen vehicle parked at a motel in Auburn. While the employees were inspecting the vehicle, Krier approached them and stated that he had rented it. The employees called 911, and when officers arrived, Krier admitted to leasing the vehicle and failing to return it. Krier confirmed that he had deprived U-Haul of its vehicle and provided the arresting officer with the factory key.

Krier's offender score was 38 on count 1 and 26 on count 2, which resulted in a standard range of 43 to 57 months on each charge. The court imposed a sentence of 43 months confinement on each count, to run concurrently. Those terms of confinement were also ordered to run concurrently with the sentences imposed on the other five cause numbers. The court also imposed the $500 victim

---

[1] "U-Haul" is a vehicle rental company.

penalty assessment (VPA) and ordered restitution in an amount to be determined at a future hearing.

On December 15, 2022, the court conducted the restitution hearing. Based on documentation submitted by U-Haul noting "the losses that they incurred, which include rental days as well as mileage rates and towing fees," the State requested a restitution award in the amount of $1,847.34. Krier argued that those expenses did not relate to the crime charged and did not constitute actual losses that were recoverable. He did not demand a jury determination of restitution, nor present any constitutional challenges to the process or determination on restitution. The court disagreed with most of Krier's objections to the amount of restitution sought by the State and found that "when someone is in the business of renting property, then they're deprived of that property and can't rent it, then that is a recoverable loss." Ultimately, after reducing the amount based on some of Krier's evidentiary challenges, the court ordered restitution to U-Haul in the amount of $1,590.77.

Krier timely appealed.

ANALYSIS

I.     Statutory Authority To Order Restitution

Krier assigns error to the trial court's imposition of restitution and asserts that it exceeded the court's statutory authority. He specifically contends the "court erred in finding the mere possibility of lost profit constituted a 'loss of property.'" No such finding exists in the record. Krier then avers the "court exceeded its authority by ordering restitution based on wholly speculative damages." This argument is without merit.

"In enacting RCW 9.94A.142,[2] the [l]egislature granted broad power to the trial court to order restitution." *State v. Enstone*, 137 Wn.2d 675, 679, 974 P.2d 828 (1999). Thus, "when restitution 'is authorized by statute, imposition of restitution is generally within the discretion of the trial court and *will not be disturbed on appeal* absent an abuse of discretion.'" *Id.* (quoting *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991)).[3] However, the trial court's interpretation of the statute is subject to de novo review. *State v. Long*, 21 Wn. App. 2d 238, 241, 505 P.3d 550, *review denied*, 200 Wn.2d 1004 (2022).

Unless the defendant agrees to the amount of restitution, "the State must prove the amount by a preponderance of the evidence." *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). "Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture." *State v. Deskins*, 180 Wn.2d 68, 82-83, 322 P.3d 780 (2014).

RCW 9.94A.753(5) provides that "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." Under RCW 9.94A.753(3)(a), when ordered pursuant to a criminal conviction, restitution "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury."

---

[2] Former RCW 9.94A.142 (2000) was recodified as RCW 9.94A.753. LAWS OF 2001, ch. 10 § 6.

[3] "'A court abuses its discretion when an order is manifestly unreasonable or based on untenable grounds.'" *State v. Butler*, 200 Wn.2d 695, 714, 521 P.3d 931 (2022) (internal quotation marks omitted) (quoting *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017)).

Here, the State provided a victim loss statement from U-Haul in order to establish the amount of restitution. U-Haul sought a total amount of $1,847.34 based on the following detailed figures: $478.80 for 24 rental days at $19.95 per day; $562.27 for 953 miles at $0.59 per mile; $176.00 in collision damage waiver fees for 16 days at $11.00 per day; $30.00 for a fuel service charge; $32.50 for a separate fuel charge; $590.16 in tow fees; $100.00 in cleaning fees; a $5.00 environmental fee; and $127.39 subtracted from the total amount for the payment it had already received for the initial rental of the vehicle. U-Haul also provided the terms of the equipment rental contract from Krier's lease of the vehicle on October 15, 2018, as well as the invoice from the towing company that returned the vehicle on November 6, 2018.

Krier pointed out that the towing company billed U-Haul for three hours of service but only provided two hours according to the invoice and noted that U-Haul sought compensation for the vehicle through November 9 but the invoice showed the towing company returned the vehicle to U-Haul on November 6. On that basis, the trial court awarded an amount of restitution less than the amount requested by the State. The trial court rejected Krier's argument that the State needed to prove the stolen vehicle would have been rented by another individual, but it ordered $1,590.77, instead of the $1,847.34 requested, based on the evidentiary issues Krier identified.

Krier relies on four cases he asserts, when read together, "demonstrate that the lost possibility of profit does not qualify as 'loss of property' under RCW 9.94A.753": *State v. Goodrich*, 47 Wn. App. 114, 733 P.2d 1000 (1987), *State v.*

*Lewis*, 57 Wn. App. 921, 791 P.2d 250 (1990), *State v. Young*, 63 Wn. App. 324, 818 P.2d 1375 (1991), and *Long*, 21 Wn. App. 2d 238. Ignoring the fact that a *mere possibility* of anything, by itself, would not qualify as property under the restitution statute and the fact that Krier's argument simultaneously fails to implicate the actual restitution award before this court, none of the cases he cites support his underlying contention that the trial court exceeded its statutory authority as to any portion of the award at issue here. *See Goodrich,* 47 Wn. App. at 116-17 (reversing restitution award based on projected future medical expenses as costs had not yet been incurred by victim); *Lewis,* 57 Wn. App. at 926 (reversing portion of restitution award requiring defendant to pay for "future earning losses" because "lost wages" only covers "expenses already incurred"); *Young,* 63 Wn. App. at 330-32 (affirming restitution award requiring defendant to pay future child support that decedent victim was obligated to pay pursuant to judgment because child support order constituted property pursuant to restitution statute); *Long,* 21 Wn. App. 2d at 243 (affirming portion of restitution award requiring payment for vacation and sick leave because "paid sick or vacation leave constitute property for purposes of RCW 9.94A.754(3)").

To the extent that Krier contends in briefing that a trial court lacks statutory authority to impose restitution beyond the "actual loss resulting from the theft," he presents an issue of statutory interpretation that we review de novo. *State v. Burns*, 159 Wn. App. 74, 78, 244 P.3d 988 (2010). "The goal of statutory interpretation is to discern and implement the legislature's intent." *State v.*

*Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We look first to the plain language of the statute and if it is unambiguous, our inquiry ends. *Id.*

RCW 9.94A.753(3)(a) provides that "[t]he amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." Our Supreme Court has already explained that this portion of the statute "shows that restitution is also strongly punitive because it *authorizes restitution in an amount that exceeds the amount necessary to compensate the victim*." *State v. Kinneman*, 155 Wn.2d 272, 280, 119 P.3d 350 (2005) (emphasis added). Because the plain language of the statute expressly permits trial courts to award restitution in an amount greater than the actual loss to the victim, we reject Krier's contrary argument.

The State presented credible evidence in the form of a victim loss statement and a rental contract that showed Krier agreed to a daily rental rate on a vehicle that he wrongfully retained and the record established that Krier's conduct deprived U-Haul of the vehicle for three weeks. Accordingly, there was a reasonable basis for the award of restitution; the trial court neither abused its discretion nor exceeded its statutory authority as to restitution.

II.    Constitutional Challenges to Restitution Award

Krier avers that the restitution award violated the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the state constitution[4] on the basis that the State did not prove the necessary facts beyond

---

[4] As a separate procedural bar to appellate review, Krier presents argument as to a purported violation of a state constitutional right to have a jury determination on restitution. It is unclear from briefing but, to the extent he asserts greater protection under our state constitution,

a reasonable doubt to a jury. The State correctly contends this error is waived. Krier next asserts the restitution order violates the excessive fines clause of the Eighth Amendment to our federal constitution and article I, section 14 of our state constitution. This challenge is also waived.

Krier did not present argument in the trial court as to his theory of a constitutional guarantee of a jury determination of restitution or object to the restitution award on the basis that it was unconstitutionally excessive. Failure to object generally waives appellate review of an issue. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). "Pursuant to RAP 2.5(a)(3), to raise an error for the first time on appeal, the error must be 'manifest' and truly of constitutional dimension." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). The only reference Krier makes in his opening brief to RAP 2.5(a) or the applicable test is a conclusory statement in a footnote that declares the "ordered restitution is a 'manifest error affecting a constitutional right.'"

---

he fails to mention, much less engage in any analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). "Whether the Washington constitution provides a level of protection different from the federal constitution in a given case is determined by reference to the six nonexclusive *Gunwall* factors." *State v. Young*, 123 Wn.2d 173, 179, 867 P.2d 593 (1994).

However, when parties fail to adequately brief the *Gunwall* factors, "this court will not consider whether the state constitution provides greater protection than that provided by the federal constitution under the circumstances presented." *State v. Cantrell*, 124 Wn.2d 183, 190, 875 P.2d 1208 (1994). Accordingly, we do not consider Krier's argument that our state constitution requires a jury determination for an award of restitution.

To demonstrate entitlement to appellate review of an issue when an objection was not made in the trial court, it is not enough to simply cite the rule. *See Id.* at 333 ("RAP 2.5(a)(3) is not intended to afford criminal defendants a means for obtaining new trials whenever they can identify some constitutional issue not raised before the trial court."); *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014) (RAP 2.5(a)(3) requires the defendant to identify the constitutional error and "make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial."); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) ("Parties wishing to raise constitutional issues on appeal must adhere to the rules of appellate procedure" and "present considered arguments to this court.").[5] In light of an apparent failure to understand the distinct components required by RAP 2.5, we must repeat the words of our Supreme Court:

> The requirements under RAP 2.5(a)(3) should not be confused with the requirements for establishing an actual violation of a constitutional right or for establishing lack of prejudice under a harmless error analysis if a violation of a constitutional right has occurred. The purpose of the rule is different; RAP 2.5(a)(3) serves a gatekeeping function that will bar review of claimed constitutional errors to which no exception was made unless the record shows that there is a fairly strong likelihood that serious constitutional error occurred.

*Lamar*, 180 Wn.2d at 583.

Because Krier fails to address RAP 2.5(a)(3) in his opening brief and does not make the necessary two-part showing to enable this court to consider this issue

---

[5] *See also* RAP 10.3(a)(6) (Appellants must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.").

for the first time on appeal, these alleged errors are not preserved and do not warrant review.

III.    VPA and Interest on Restitution

Krier asserts that, based on two recent statutory amendments, remand is required for the trial court to both strike the VPA from the judgment and sentence and to consider whether to waive interest on the restitution.  However, the State appropriately points out that Krier's notice of appeal only designates the order setting restitution and not the judgment and sentence (J&S).  No motion to amend or supplement the notice of appeal was received in this case, nor was a separate notice of appeal filed from the J&S which could have been consolidated with this case for review.  Accordingly, the J&S is not properly before this court.  Krier does not acknowledge this fact until his reply brief, wherein he urges us to exercise discretion under RAP 1.2(c) to reach the merits of this assignment of error.  It is well-settled that we do not consider arguments presented for the first time in reply. *State v. Orozco*, 144 Wn. App. 17, 22, 186 P.3d 1078 (2008).  Accordingly, we decline to reach these challenges.

IV.    Statement of Additional Grounds for Review

Krier provides a statement of additional grounds for review (SAG) in which he raises two issues.  A defendant may file a pro se SAG "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a); *see also State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013)

- 10 -

("[W]e only consider arguments that are not repetitive of briefing."). We "will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Moreover, this "court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." *Id.*

First, Krier avers "the trial court exceeded the mandated 180-day time limit and good cause did not exist." Trial courts are required to "determine the amount of restitution at the sentencing hearing or within 180-days unless good cause is shown." *State v. Johnson*, 96 Wn. App. 813, 816, 981 P.2d 25 (1999). Here, the trial court's orders extending the deadline for entry of the restitution award each provided good cause as the parties' "negotiations as to the amount" were still ongoing, suggesting there was at least an attempt to resolve this issue by an agreed order. The record is clear that counsel for the State and defense believed there was good cause to continue the determination of restitution beyond the statutory timeframe and the court agreed. Thus, we reject this alleged error.

Second, Krier contends the "prosecuting attorney violated the plea agreement by not recommending the agreed upon sentence recommendation" and "defense counsel did not request mitigated sentence as previously agreed to." If he is referencing the State's agreement to recommend a drug offender sentencing alternative with credit for time served, the State explained at sentencing that it changed its recommendation based on Krier's positive urinalysis test that violated the terms of his release on electronic home detention pending sentencing. Because the agreement as to the sentencing recommendation was contingent on

Krier's compliance with the conditions of his release pending sentencing, this alleged error is without merit. And to the extent he is attempting to raise an ineffective assistance of counsel claim, his bald assertion that defense counsel failed to request a mitigated sentence is plainly insufficient to demonstrate entitlement to relief on such a claim.

Affirmed.

WE CONCUR: