[No. 86359-8.   En Banc.]
Argued May 24, 2012.      Decided July 19, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM ADAM GRAY, *Petitioner*.

*Maureen M. Cyr* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Kristin A. Relyea* and *James M. Whisman, Deputies,* for respondent.

¶1  FAIRHURST, J. — RCW 9.94A.753(1) requires a court to "determine the amount of restitution due at the sentencing hearing or within one hundred eighty days." RCW 9.94A-.753(4) authorizes a court to modify the amount of restitution "during any period of time the offender remains under the court's jurisdiction." At issue in this case is whether RCW 9.94A.753(4) permits a court to modify a restitution order more than 180 days after sentencing to include expenses that were incurred before the trial court issued its original restitution order. We hold that the plain language of RCW 9.94A.753(4) clearly authorizes courts to make such modifications. We affirm the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

¶2  William Adam Gray shot Vita M. Moimoi and Sanelive S. Hikila at close range. Moimoi suffered a serious leg wound and Hikila bled to death. Although Gray fled the scene, he was soon identified and charged with second degree felony murder, first degree assault, and unlawful possession of a firearm. Gray remained at large for almost two years before his apprehension and arrest. Gray pleaded guilty to first degree manslaughter and second degree assault.

¶3  At a sentencing hearing held on June 5, 2009, the State requested restitution in an amount to be determined after the victim's assistance unit (VAU) had computed the appropriate amount. The court agreed, and Gray waived his right to be present at any future hearing.[1] On June 10, 2009, VAU sent a letter to Hikila's mother, Salome Hikila, asking if the family sought any restitution reimbursement. VAU received no response from Hikila's family but received information from the crime victims compensation program (CVCP) that it had expended $6,730.82 for Hikila's funeral expenses. The State pursued the amount sought by CVCP,

---

[1] There was no contested hearing.

and on August 6, 2009, the court ordered Gray to pay CVCP $6,730.82.[2]

¶4 In early April 2010, Salome Hikila called CVCP to inquire about restitution. She said she did not receive VAU's letter, but the family had incurred additional funeral expenses amounting to $15,253.32. This amount included $2,386.00 for a headstone; $6,500.00 for funeral items; $504.16 for memorial placement and a flower vase; and $5,863.16 for interment right, opening and closing costs, and the outer burial container. All of the expenses were documented.

¶5 On May 4, 2010, the State moved to modify the original restitution order to include the family's unreimbursed funeral costs. Citing *State v. Gonzalez*, 168 Wn.2d 256, 226 P.3d 131 (2010), the State argued that the order could be modified under RCW 9.94A.753(4). Gray did not dispute the amount of the modification but did dispute the timeliness of the State's motion. The trial court noted that in *Gonzalez* the restitution amounts sought in the modification were incurred after the six month time period but found that we did not limit our holding to that circumstance. The trial court granted the State's motion and entered a modification order awarding an additional $15,253.32 directly to Salome Hikila.

¶6 Gray appealed to Division One of the Court of Appeals. The Court of Appeals affirmed in an unpublished decision holding that the plain language of the statute permits an increase based on newly available information, whether or not the expenses were incurred before the original restitution order was entered. *State v. Gray*, noted at 162 Wn. App. 1013, 2011 WL 2184261, 2011 Wash. App. LEXIS 1326. Gray petitioned this court for discretionary review, and we granted review. *State v. Gray*, 172 Wn.2d 1023, 268 P.3d 225 (2011).

---

[2] CVCP had covered this portion of the Hikila family's expenses.

## II. ISSUES

¶7 A. Does the plain language of RCW 9.94A.753(4) authorize a court to modify a restitution order to include expenses that were incurred prior to the issuance of the order?

¶8 B. Do Gray's arguments overcome the plain language of RCW 9.94A.753(4)?

## III. STANDARD OF REVIEW

■ ¶9 A court's decision to impose restitution is generally within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). A court abuses its discretion only when its order is manifestly unreasonable or untenable. *State v. Enstone*, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999).

## IV. ANALYSIS

■ ■ ¶10 "A court's authority to order restitution is derived solely from statute." *Gonzalez*, 168 Wn.2d at 261. RCW 9.94A.753 governs the amended restitution order in this case.[3]

---

[3] RCW 9.94A.753 states:

(1) When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days except as provided in subsection (7) of this section. The court may continue the hearing beyond the one hundred eighty days for good cause. The court shall then set a minimum monthly payment that the offender is required to make towards the restitution that is ordered. The court should take into consideration the total amount of the restitution owed, the offender's present, past, and future ability to pay, as well as any assets that the offender may have.

(2) During the period of supervision, the community corrections officer may examine the offender to determine if there has been a change in circumstances that warrants an amendment of the monthly payment schedule. The community corrections officer may recommend a change to the schedule of payment and shall inform the court of the recommended change and the reasons for the change. The sentencing court may then reset the monthly minimum payments

¶11 RCW 9.94A.753 grants trial courts "broad power" to order and modify restitution. *Enstone*, 137 Wn.2d at 679. It also sets certain limits. Under RCW 9.94A.753(1), a court ordering restitution must issue its order within 180 days of sentencing. The time limit is mandatory unless extended for good cause. *State v. Krall*, 125 Wn.2d 146, 148-49, 881 P.2d 1040 (1994). If an offender objects to the restitution

---

based on the report from the community corrections officer of the change in circumstances.

(3) Except as provided in subsection (6) of this section, restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

(4) . . . For an offense committed on or after July 1, 2000, the offender shall remain under the court's jurisdiction until the obligation is completely satisfied, regardless of the statutory maximum for the crime. The portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime. The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount. The offender's compliance with the restitution shall be supervised by the department only during any period which the department is authorized to supervise the offender in the community under RCW 9.94A.728, 9.94A.501, or in which the offender is in confinement in a state correctional institution or a correctional facility pursuant to a transfer agreement with the department, and the department shall supervise the offender's compliance during any such period. The department is responsible for supervision of the offender only during confinement and authorized supervision and not during any subsequent period in which the offender remains under the court's jurisdiction. The county clerk is authorized to collect unpaid restitution at any time the offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations.

. . . .

(7) Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW. If the court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the crime victims' compensation act, the department of labor and industries, as administrator of the crime victims' compensation program, may petition the court within one year of entry of the judgment and sentence for entry of a restitution order. Upon receipt of a petition from the department of labor and industries, the court shall hold a restitution hearing and shall enter a restitution order.

amount, the court must hold a hearing and accurately determine the amount within the allotted time. *State v. Ryan*, 78 Wn. App. 758, 761-63, 899 P.2d 825 (1995).[4] Once a court has ordered restitution, it may modify its order "as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction." RCW 9.94A.753(4). A court may modify the total amount of restitution more than 180 days after sentencing. *Gonzalez*, 168 Wn.2d at 266.

¶12 Gray contends that the trial court exceeded its statutory authority by modifying its restitution order to include funeral expenses incurred prior to the issuance of the original order. According to Gray, once the 180 day time limit has expired, the State may not seek to increase restitution by any amount it could have proved within the time limit. The State contends that Gray's interpretation conflicts with the plain language of the text and neglects the legislature's clear desire for defendants to pay restitution.[5] To resolve this case, we consider the statutory text and Gray's arguments.

A. The plain language of RCW 9.94A.753(4) clearly authorizes a court to modify the amount of restitution beyond the 180 day deadline

¶13 The meaning of a statute is a question of law we review de novo. *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001). In interpreting a statute, our fundamental objective is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Statutory interpretation begins with a statute's plain meaning. *Lake v. Woodcreek*

---

[4] In determining the amount, a trial court may either rely on a defendant's admission or acknowledgment of the amount of restitution or it may determine the amount by a preponderance of the evidence. *State v. Hunsicker*, 129 Wn.2d 554, 558-59, 919 P.2d 79 (1996).

[5] The State further contends that Gray's plea agreement precludes him from challenging the modification order. Because we hold that RCW 9.94A.753(4) authorizes the modification in this case, we need not reach the issue.

*Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). A statute is ambiguous when it is " 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.' " *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

¶14 Gray does not point to any language in RCW 9.94A-.753(4) to support his claim. According to Gray, the legislature must have intended to limit a court's authority to modify restitution orders beyond the 180 day deadline. He argues that a broad reading of RCW 9.94A.753(4) would defeat the purpose of section .753(1). He also argues that penal statutes must be strictly construed, *Blanchard Co. v. Ward*, 124 Wash. 204, 207, 213 P. 929 (1923), and ambiguous statutes must be interpreted in favor of the defendant, *State v. Jacobs*, 154 Wn.2d 596, 601, 115 P.3d 281 (2005). He concludes that the legislature granted courts authority to modify the restitution amount "only to address factors that did not exist at the time of the initial award." Suppl. Br. of Pet'r at 5.

¶15 RCW 9.94A.753(4) expressly grants courts authority to modify the amount of restitution after 180 days, and we have held that courts may modify the total amount of restitution after 180 days. *Gonzalez*, 168 Wn.2d at 266. Only one sentence in the modification provision limits a

court's discretion;[6] a "court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." RCW 9.94A.753(4). This language indicates the legislature knows how to limit a court's discretion to modify restitution and the legislature did not intend to limit a court's discretion in the way that Gray suggests. The text simply does not impose the limit Gray seeks. "Where the Legislature omits language from a statute, intentionally or inadvertently, this court will not read into the statute the language that it believes was omitted." *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002).

B. Gray's arguments cannot overcome the plain language of the text

¶16 To circumvent the statute's plain language, Gray advances a series of policy and case-based arguments. But none of Gray's arguments overcome the plain language of the text.

1. *Finality*

¶17 Gray first argues that a court's unfettered authority to modify restitution defeats the purpose of finality. He asserts that the general purpose of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, is " 'to fix all the terms and conditions of a sentence, with exactitude, at the time sentence is imposed.' " Suppl. Br. of Pet'r at 7 (quoting DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 1-3 (1985)). Gray also contends that the specific "purpose of the mandatory 180-day time limit is to secure finality of the judgment." Pet. for

---

[6] RCW 9.94A.753(3) limits a court's discretion to order restitution in several ways. For example, restitution shall be based on easily ascertainable damages, shall not include damages for pain and suffering, and shall not exceed double the amount of the offender's gain or the victim's loss. However, neither these restrictions nor the restriction listed in RCW 9.94A.753(4) suggest that the legislature limited a court's authority to modify restitution only to address factors that did not exist at the time of the initial order.

Review at 7. He therefore urges us to interpret RCW 9.94A.753(4) to comport with the general purpose of the SRA and the specific purpose of RCW 9.94A.753(1).

¶18 Gray is partially correct. The legislature certainly values finality in sentencing, and we have recognized that victims' "rights will be cut off" when the State fails to comply with the 180 day time limit. *State v. Moen*, 129 Wn.2d 535, 542, 919 P.2d 69 (1996). We have also recognized that the criminal justice system is not a substitute for the civil justice system. *Id.*

¶19 But Gray wrongly assumes that the finality principles that control RCW 9.94A.753(1) also control section .753(4). This assumption is incorrect. After all, if an order can be modified, it is not truly final. Rather than assuming that RCW 9.94A.753(4) and .753(1) are both controlled by the principle of finality, it is more reasonable to conclude that the legislature intended RCW 9.94A.753(4) to provide some needed flexibility.[7] This conclusion comports with the plain language of the statute and readily resolves the alleged tension between the two provisions.

¶20 To the extent finality principles have a role, Gray overstates the force of these principles. First, the primary purpose of the restitution statute is not finality, but rehabilitation. *State v. Barr*, 99 Wn.2d 75, 79, 658 P.2d 1247 (1983) (Restitution is "primarily a rehabilitative tool;" it "increases the defendant's self-awareness and sense of control over his/her own life."). This purpose is evidenced not only by the enactment of the restitution statute, but also by later amendments, which have sought to increase offender accountability. *Gonzalez*, 168 Wn.2d at 265. A secondary purpose is to compensate victims and their survivors who have suffered "the severe and detrimental

---

[7] The State argues that a flexible rule is needed to support victims and their families. It notes that criminal cases may last a long time. It further notes that crime victims often experience difficulty and grief. As a result, they may change their residence, become ill, misplace and rediscover receipts, and suffer mental illness or depression. Suppl. Br. of Resp't at 6-7.

impact of crime." RCW 7.69.010; *see, e.g.*, *Gonzalez*, 168 Wn.2d at 265-66 ("Thus . . . it is clear the statute is intended to ensure that defendants fulfill their responsibility to compensate victims for losses resulting from their crimes."). Legislative intent to protect victims is evidenced by the very existence of the modification provision itself, which permits courts to alter the total amount of restitution even after 180 days have passed. *Gonzalez*, 168 Wn.2d at 266. It is also evidenced by later statutory amendments. *Id.* at 265 ("The legislature's amendments to the restitution statute demonstrate that the legislature has consistently sought to ensure that victims of crimes are made whole after suffering losses.").

### 2. *Accuracy*

¶21 Gray next asserts that "the total amount of restitution [must] be determined within 180 days of sentencing unless 'good cause' is shown." Appellant's Reply Br. at 7 (quoting RCW 9.94A.753(1)).[8] But the word "total" does not appear in the text. Gray merely inserts the word to advance his argument.

¶22 Gray then claims that a court may not extend the 180 day deadline for a " 'garden variety claim of excusable neglect.' " *State v. Duvall*, 86 Wn. App. 871, 875, 940 P.2d 671 (1997) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)). He argues that the State has not shown a sufficient basis to

---

[8] According to Gray, courts must consider several factors to determine whether good cause exists, including the length of the delay, the reason for the delay, the defendant's assertion of his right to speedy sentencing, and the extent of prejudice to the defendant. *State v. Tetreault*, 99 Wn. App. 435, 437, 998 P.2d 330 (2000) (180 day period for determining restitution is mandatory); *State v. Johnson*, 96 Wn. App. 813, 817, 981 P.2d 25 (1999) (trial court does not have statutory authority to order restitution hearing beyond 180 day time limit); *State v. Duvall*, 86 Wn. App. 871, 875, 940 P.2d 671 (1997) (tolling of statute for seven months did not frustrate the purpose of the limitation period). But none of these cases involve a modification under RCW 9.94A.753(4); rather, each case involves the issuance of an original order under section .753(1). These cases hold that good cause is a factor when a restitution order has not been filed within the time limit but do not hold that the modification provision is subject to the same analysis.

extend the 180 day deadline in this case because it is no more than excusable neglect and Gray was not at fault.

¶23 Gray correctly contends that the trial court is required to determine the amount of restitution due within 180 days of the sentencing hearing; but in this case, the trial court did enter an initial restitution order within 180 days. After the trial court was presented with new information, it exercised its discretion to amend the order. Gray's argument fails because it conflates the extension of an initial order within 180 days with modification of that order.

### 3. *Diligence*

¶24 Gray also contends that a broad interpretation of RCW 9.94A.753(4) would permit the State to seek modifications at any time based on newly collected evidence, "no matter how dilatory it was in gathering that evidence." Suppl. Br. of Pet'r at 10. Gray's argument, while technically correct, is unpersuasive. Although the State may move to modify a restitution order, the court may deny the State's motion. *Krall*, 125 Wn.2d at 148 (the word *"may"* is directory, not mandatory). In other words, the State is not automatically entitled to modification no matter how dilatory it was; a court retains the discretion to grant or deny the State's request. Further, as noted by the State, the State has no interest in delay for the sake of delay, but also seeks timely resolution of restitution matters.

### 4. *Case law*

¶25 Gray cites several cases to argue that a trial court must determine the total amount of provable restitution within 180 days, may not add amounts that the State could have previously proved, and may add only new expenses incurred after the statutory deadline has passed. But Gray infers these principles from cases that are factually distinguishable.

¶26 In *State v. Burns*, 159 Wn. App. 74, 244 P.3d 988 (2010), the defendant agreed to pay $8,983.25 in restitution

for charged crimes and an undetermined amount for uncharged crimes. The trial court ordered Burns to pay $8,983.25 for the charged crimes, plus any additional restitution for the uncharged crimes in an amount to be determined. After 180 days had passed, the trial court issued an additional order setting restitution, requiring Burns to pay $73,237.40 in restitution for the uncharged crimes. *Id.* at 79. On review, the Court of Appeals reversed. It held that the additional order was not a modification. It said, "There is no restitution to modify . . . if it is not 'determined' in the first place." *Id.* (quoting RCW 9.94A-.753(1)). This case is unlike *Burns* because the amount of restitution for Hikila's funeral expenses was initially determined and then later modified.

¶27 In *State v. Griffith*, 164 Wn.2d 960, 195 P.3d 506 (2008), the defendant pleaded guilty to possession of a certain number of stolen items, but there were indications that she possessed more. After a full evidentiary hearing, the sentencing court found that Griffith was in possession of $11,500 in stolen property and ordered her to pay restitution in that amount. We vacated the order and remanded for a new restitution hearing because the trial court's finding was not supported by substantial evidence. In a footnote, we said introducing new evidence on remand would conflict with the statutory requirement that restitution be set within 180 days. *Id.* at 968 n.6. But in this case, there was no contested factual hearing. The trial court merely exercised its discretion to modify an agreed order, which the statute permits it to do.

¶28 In *Ryan*, 78 Wn. App. at 763, the Court of Appeals reviewed two cases in a consolidated appeal. In each case, the sentencing court had entered ex parte restitution orders subject to approval by the defendant. Even though each defendant objected, the court did not hold a timely hearing to adjudicate the objection. The *Ryan* court said that "the trial court's ability to modify an order of restitution does not impact its initial obligation to accurately determine the

amount within 60 days of sentencing." *Id.* It held that restitution had not been determined within the statutory period (then 60 days) because each defendant contested the court's ex parte restitution order. That is not the case here, where the trial court determined the amount of restitution within the statutory deadline and then modified the amount under RCW 9.94A.753(4).

¶29 Finally, Gray argues that our case law permits modification after 180 days for only two reasons: (1) SRA authorization and (2) changed circumstances. Gray first cites *In re Personal Restraint of Martin*, 129 Wn. App. 135, 118 P.3d 387 (2005) and *State v. Reed*, 103 Wn. App. 261, 12 P.3d 151 (2000). These cases hold that a court may modify a restitution order after 180 days when the modification is authorized by the SRA.

¶30 But neither *Martin* nor *Reed* involves a court-ordered modification. In *Martin*, the trial court ordered Martin to pay restitution on a schedule to be established by his community corrections officer (CCO). While Martin was still incarcerated and before he had a CCO, the department of corrections (DOC) began seizing money from his inmate account to satisfy his legal financial obligations. Martin did not appeal a court-ordered modification; rather, he argued that DOC's actions "constitute[d] an improper modification of the court's judgment and sentence." *Martin*, 129 Wn. App. at 143. In *Reed*, the trial court ordered Reed to pay a determined amount of restitution and said that additional restitution could be ordered if it was timely established. Even though the State failed to meet the deadline, the trial court ordered Reed to pay the additional amount of restitution. Like Martin, Reed did not appeal a court-ordered modification; rather, he appealed a "second restitution order" that the State conceded was filed after the deadline had passed. *Reed*, 103 Wn. App. at 264. Although the Court of Appeals in *Reed* said that the State would be foreclosed in its argument if not for the statute, the court also contemplated that a second order may be determined to be a modification of the first. *Id.* at 265 n.6.

¶31 Gray then cites *Gonzalez*, 168 Wn.2d 256 (modification permitted to cover a victim's ongoing medical expenses); *State v. Goodrich*, 47 Wn. App. 114, 733 P.2d 1000 (1987) (modification permitted to cover additional expenses victim had actually incurred); and *State v. Edelman*, 97 Wn. App 161, 168, 984 P.2d 421 (1999) (modification permitted to change designated payee after the victim's death). He contends that these cases stand for the proposition that modification may be made only when the victims' circumstances have changed after the 180 day deadline.

¶32 But none of these cases holds that modification *must be* warranted by changed circumstances. None of these cases even addresses the issue. Each case simply illustrates a particular situation warranting modification. *Gonzalez* is instructive. Gonzalez committed first degree assault and robbery. The victim suffered extensive injuries and underwent reconstructive surgery. The sentencing court ordered Gonzalez to pay more than $20,000 in restitution for medical expenses, but the victim continued to accrue medical bills. The State moved to modify the restitution order to cover the additional costs incurred. Opposing the motion, Gonzalez argued that the word "amount" was ambiguous because it could have meant the total amount of restitution or the amount of the monthly payment. He also argued that the motion was untimely because more than 180 days had elapsed since sentencing. We held that RCW 9.94A.753(4) unambiguously allows a sentencing court to modify the total amount of restitution. We also found the plain language to be consistent with legislative intent to make victims whole after suffering losses and to increase offender accountability. *Gonzalez*, 168 Wn.2d at 265-66. But we did not address the issue presented in this case—whether expenses known or ascertainable before sentencing may be added after the 180 day period. Therefore, we did not hold that restitution may be modified only to compensate a victim for ongoing expenses.

¶33 Rather than relying on cases that do not address the issue before us, we rely on one that does—*State v. Halsey*,

140 Wn. App. 313, 165 P.3d 409 (2007).[9] There, as here, the sentencing court entered a restitution order within 180 days of sentencing. There, as here, the prosecutor sought modification to increase the total amount of restitution because he did not know the full amount of restitution when the original order was entered. And there, as here, the offender argued that the amended restitution order was untimely because it was not ordered within 180 days of his sentencing hearing. The *Halsey* court conducted a short but straightforward analysis. It held that RCW 9.94A.753(4) allows modification during any period of time the offender is still under the court's jurisdiction, Halsey was still under the court's jurisdiction, and the court had the authority to impose the amended restitution order.

■ ¶34 RCW 9.94A.753(4) plainly authorizes a court to modify the amount of restitution "during any period of time the offender remains under the court's jurisdiction." RCW 9.94A.753(4) limits a court's authority to modify the amount of restitution "because the offender may lack the ability to pay the total amount," but the statute does not otherwise restrict the reasons a court may modify restitution. Gray's policy and case-based arguments cannot overcome the plain language of the text.

## V. CONCLUSION

¶35 The plain language of RCW 9.94A.753(4) clearly authorizes a court to modify the amount of restitution so long as it retains jurisdiction, and Gray's arguments are unpersuasive. We hold that the sentencing court did not abuse its discretion by modifying Gray's restitution order to include funeral expenses that were incurred before the

---

[9] Gray acknowledges *Halsey* but argues that it did not analyze the issue in light of the fundamental need for finality.

issuance of the court's original order. We affirm the Court of Appeals.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ. JJ., concur.